## Montgomery *et al. v.* The Governor.

The sureties on a tax collector's bond are not responsible for the collection of taxes
   which were assessed for the fiscal year previous to his election.
In a suit against the tax collector and his sureties, on their bond for neglect of duty, it
   is competent for the defendants to prove what kind of funds were collected, in order
   to show whether they were such as allowed by law.
In a suit against the tax collector's sureties, it is competent for them to prove when
   the tax collector died, and what amount of taxes remained uncollected at the time of
   his death.

IN ERROR from the circuit court of the county of Adams.

This was an action of debt, on a tax collector's bond made by
Hiram Hanchett, now deceased, but who, in his lifetime, was
elected tax collector of Adams county, at the biennial election, in
November, 1837, the offices of assessor and collector being held
separately in that county, and plaintiffs in error, who were the
sureties of Hanchett, and have survived him.   The action was
brought to recover arrearages of taxes for the fiscal year which
commenced on the 1st day of March, 1837, and ended on the last
day of February, 1838.

The first breach of the condition of the bond assigned in the
declaration is, "that the said Hanchett in his lifetime was then and
there the duly elected and qualified tax collector of the said county
of Adams, for the fiscal year commencing the 1st day of March,
1837, and ending on the last day of February, 1838; and the said
plaintiff further avers, that, between the said 15th day of Novem-
ber, A. D. 1837, and the 1st day of March, 1838, there was a large
amount of taxes, to wit: the sum of twenty-five thousand dollars,
assessed by the assessor of taxes for the county of Adams and state
aforesaid, as the tax due and owing by divers owners of property
in, and citizens of said county, to said state, for the fiscal year
ending on the last of February, 1838, (the said assessor being duly

Montgomery *et al. v.* The Governor.

qualified to act as such,) and which said amount of taxes so assessed, to wit, the sum of twenty-five thousand dollars, on the said 1st day of March, 1838, came into the hands of the said Hanchett in his lifetime, by him to be collected as collector of taxes for the said county of Adams, and paid into the treasury of the state according to law, viz. on the 1st of March, 1838, and which said amount of taxes, so assessed as aforesaid, viz. the sum of twenty-five thousand dollars, was by him, the said Hanchett, in his lifetime, collector as aforesaid, collected, according to law."

The other breach assigned is, in substance, that, at the time of the making of the writing obligatory aforesaid, it was the duty of the said Hanchett to collect the taxes of the said county, then and thereafter to be assessed, for the fiscal year ending the last day of February, 1838, and to pay the same into the treasury of the state; that the amount so assessed for the fiscal year aforesaid amounted to the sum of twenty-five thousand dollars, averring that the same had not been collected and paid, either by the said Hanchett or his sureties aforesaid.

The condition of the bond was set out in the declaration, and recites that the said Hanchett was elected tax collector of Adams county, in November, 1837, and the bond bears date the 15th of November, 1837, and is given for the penal sum of twenty-five thousand dollars.

The defendants in the court below, Montgomery and Bledsoe, filed several pleas. 1. That the said Hanchett did not collect the said sum of twenty-five thousand dollars, nor any part thereof. On which plea issue to the country was joined.

The 2d plea set forth that the said Hiram Hanchett departed this life on the 30th of November, 1837, before the 1st of January, 1838, and therefore never had legal authority to collect the taxes assessed for the said county, and could not collect the same, except by the voluntary consent of those who owed them.

The 3d plea set forth that the assessment of taxes did not come to the hands of said Hanchett to be collected. And on this plea issue to the country was also joined, after demurrer overruled.

The 4th plea set forth that the assessment aforesaid was not made for the fiscal year aforesaid; and on this issue was taken to the country, after demurrer overruled.

To the 2d, 3d, and 4th pleas, the plaintiff's counsel demurred, and defendants joined in demurrer. The court sustained the demurrer to the second plea, and overruled it as to the others, and the state took issue on the pleas.

The defendants then plead other pleas, viz: the plea of payment by the deceased Hanchett, and by his sureties afterwards, on which issues were joined to the country. The cause was submitted to a jury, and verdict for plaintiff for nine thousand seven hundred and forty-three dollars, and judgment was rendered thereon.

On the trial before the jury, the plaintiff below gave in evidence the official bond aforesaid, and proved by Edward Staunton, that some time in August, 1837, he delivered to Hiram Hanchett the assessment roll of taxes, as made for the year 1837, but did not recollect the amount; that he also delivered one copy to the auditor of public accounts, and another copy to the county treasurer. The plaintiff also introduced the auditor's certificate, setting forth the indebtedness of H. Hanchett as tax collector as aforesaid, for the taxes of 1837, to the amount of seven thousand seven hundred and eight dollars and nine cents: all which evidence was objected to by the defendants, but the objection was overruled, and defendants excepted.

The defendants then offered witnesses to prove the death of H. Hanchett, the kind of funds he collected for taxes in 1837, and the amount of taxes uncollected at the time of Hanchett's death. This evidence was objected to, and the objection sustained, and defendants excepted.

The errors assigned are, 1. That the court erred in sustaining the demurrer to the second plea. 2. In admitting the auditor's certificate to go to the jury. 3. In permitting the evidence of S. Staunton to go to the jury. 4. In ruling out the defendant's evidence. 5. In overruling the motion for a new trial.

MONTGOMERY for plaintiff in error.

1. The court erred in sustaining the demurrer to the second plea. This plea states that Hanchett died on the 30th November, 1837, and never had lawful authority and power to collect the taxes, and defendants are not liable for the failure to collect the taxes.

Montgomery *et al. v.* The Governor.

Conceding the position for the present, that Hanchett, who was elected in November, 1837, was authorized to collect the taxes of the fiscal year ending on the 1st of March, 1838, which we intend to contest hereafter, it must appear strange to one familiar with the statutes on the subject, that sureties of a tax collector are to be held responsible for his neglecting to collect taxes, to enforce payment of which he had no legal power during his life.

The statute gives the collector of taxes power, by distress, and sale of goods, &c. to collect taxes of those who do not voluntarily pay.  How. & Hutch. 104, sec. 10. But this can only be done after the 1st day of January of the fiscal year, which ended on the 1st of March.   How. & Hutch. 113, sec. 37.

From the averments in the plea, it is made to appear that Hanchett died in a few days after his election, and before the time prescribed by the legislature to coerce the payment of the taxes of that year; and we cannot justly infer that the legislature intended that a collector should be responsible for having failed to collect taxes, the payment of which he never had the right to enforce.   How. & Hutch. 271, sec. 10.

2. The court erred in admitting as evidence to the jury, the certificate of A. B. Saunders, auditor of public accounts.

The statute which prescribes the mode of proceeding against defaulting tax collectors, and makes the auditor's certificate evidence, was passed at a time that the offices of assessor and collector were one, or conferred on the same person, and the statute designates the person as assessor and collector; (How. &. Hutch. 108; sec. 17,) and is a part of the same statute which makes it the duty of the assessor and collector to make three lists of the taxable property, &c. of his county, and deposit one with the auditor of public accounts, one with the county treasurer, and one he kept for his own use.   How. & Hutch. 102, sec. 6, 7.   While these offices were in the same person, there was some propriety in making the auditor's certificate evidence against him, as it was founded on the party's own statement of the amount of taxes he ought to collect; and having full power to make the collections, or in cases of insolvency the means of relief, it was but reasonable he should be held to account for all the taxes assessed: and there was nothing unjust or unconstitutional in making the mere certificate of the

Montgomery *et al. v.* The Governor.

auditor evidence against him. That certificate was in the nature of evidence of an account stated between the parties. We admit that it was competent to make an auditor's certificate evidence, when such certificate was based upon a settlement made between the parties; but it is certainly contrary to our constitution to make the certificate of an officer evidence against another officer, when it is founded on the acts of a third officer, no way connected with the person sought to be charged, and the correctness of whose showing the person sought to be charged never had an opportunity to contest. See Peters' Rep. Randolph's case.

3. The court erred in permitting the evidence of E. Staunton to go to the jury to prove that he (Staunton) delivered to Hanchett a list of the assessment of taxes for the year 1837.

One reason given upon the trial is stated on the record, to wit: that the list itself should be produced, or a copy. It appears that Hanchett was to be held chargeable for the collection of all the taxes returned to him by Staunton, or of which Staunton had returned a list to the auditor. It was in the power of the prosecutor to furnish a copy of the list, as one copy was required to be kept by the county treasurer, and another by the auditor, and the witness could have had an opportunity to examine and state whether they were true copies of the list he had furnished Hanchett. It cannot be lawful that Hanchett shall be responsible for the collection of the taxes stated in a list furnished the auditor by the assessor, without proof that a copy of the list was furnished him, that he might collect and account for it. The vagueness of Staunton's testimony serves to show the propriety and justice of this objection.

But a stronger, and in our view a conclusive objection, *to the* admission of the evidence is; that the securities on his bond executed in November, 1837, were not responsible for the taxes of the fiscal year ending on the 1st of March, 1838. The tax collector in office previous to the election in 1837, was entitled by law, notwithstanding the expiration of his term of service, to collect the taxes for the fiscal year ending March, 1838. How. & Hutch. 108, sec. 20. Even if such collector, after going out of office, gave a list to his successor to collect, the successor was accountable to him, and not to the auditor.

Under this statute it is clear, that if Hanchett was liable for the taxes of the fiscal year ending March, 1838, it was in consequence of an appointment previous. to November, 1837, and was not secured by the bond, which is the foundation of the action in this case.

It may be objected to this view of the case, that if the position is tenable, it applies to the whole cause of action stated in the declaration, and the defendants should have demurred. We concede that the proper course of pleading would have been to demur, but in the hurry of business this point was overlooked; but when the plaintiff demurred, as this was an objection to the substance of the declaration, the court should have sustained the demurrer, as a demurrer to the declaration, as that was the first faulty portion of the pleading. 1 Chitty's Pleading, 647.

4. The court erred in refusing the plaintiffs in error the right to prove when Hanchett died.

This has been discussed under the first assignment of errors. It is admissible evidence under the issue, in which the defendants deny that Hanchett collected the taxes as charged in the declaration. It might constitute one of a chain of circumstances going to show that he had not collected the money.

5. The court erred in. ruling out the question put to Staunton " what kind of funds did Hanchett collect for taxes in the year 1837? "

In May, 1837, an act was passed making the post notes of all the incorporated banks of the state receivable in payment of taxes, &c. How & Hutch. 218, sec. 12. This law was in force at the time Hanchett was collecting taxes, and was not repealed until 1839.

If the defendants below had been allowed to prove the kind of funds which were collected, it would have followed, that they could have been allowed to show the real value. As it was not a matter of discretion to take depreciated paper, but a duty imposed on him, it is unreasonable and unjust that his security should be held responsible for the nominal value. The loss sustained by the government was the real value of the fund, not the nominal value.

6. The court erred in ruling out the evidence of Marsh to prove that Hanchett died in December, 1837, leaving a large amount of taxes uncollected.

7*

Montgomery *et al. v.* The Governor.

There is no statute regulating the collection of taxes left uncollected by the death of the collector. Under such circumstances, the most reasonable view of the subject seems to be that no one but the successor in office can collect them. Being public dues, none but a public officer can collect them. The statute which continues an incumbent beyond the expiration of his term of office, invests him with all the characteristics of a public officer for that purpose. His executor or administrator has no such powers. The taxes left uncollected must be collected by the successor, and it was competent to show that they were left uncollected at the death of Hanchett, under the plea which denied the collection.

7. The court erred in refusing to grant a new trial. The court should have granted this motion, not only for the reasons heretofore urged, but because it plainly appears from the evidence that no list of taxes was given to Hanchett subsequent to his new appointment in November, 1837; and as the defendants were sued on the bond given in Nov. 1837, they can only be held liable for the taxes collected, or which should have been collected, by virtue of that appointment, which we have before shown, did not embrace the taxes of the fiscal year ending March, 1838. Those taxes he collected by virtue of his previous appointment, and his securities on his previous bond are liable for them. The testimony of Staunton shows that the list of taxes was given to Hanchett before the 1st of September, 1837. This gave him the legal right to collect them whether he was re-elected or not; and his re-election cannot relieve his former securities from their responsibility for the faithful discharge of the duty, and shift it on new securities, who by their undertaking are only responsible for such taxes as he was legally authorized to collect by virtue of his new appointment.

The third plea, that no assessment of the taxes of the fiscal year ending March, 1838, came to the hands of Hanchett, was proved to be true by Staunton; for he swore that the list which he gave to Hanchett was given to him before the 1st of September, 1837, full two months before his election, and before the bond in this case was given. If he was tax collector in September, 1837, it was by virtue of a different appointment, and proof that the list was furnished him does not sustain the allegations of the declaration any more than proof that such list was handed to his predecessor. So

far as these defendants are concerned, the list was handed to his predecessor. As the third plea was true, the verdict should have been for the defendants ; and as the finding was different, a new trial should have been granted.

Mr. Justice Turner stated the case, and delivered the opinion of the court.

The same difficulty exists in reconciling and construing the several acts of our legislature, on the subject of revenue, passed under the old and under the amended constitution of our state.

By the act of 1822, Rev. Code, p. 286, sec. 3, the governor was to make annual appointments of assessor and collector of taxes for each county. The taxable property held on the 1st day of January of each and every year was to be assessed by the 1st of June, and the lists of assessments were to be completed and delivered, one copy to the auditor, one to the county treasurer, and one was to be retained by the assessor and collector, by the 1st of July, in each year. By the same act of 1822, the taxes were to be paid into the treasury on or before the 1st Monday of November ; by the act of 1823, they were to be so paid by the 1st day of January ; and by the act of 1830, they were to be paid by the 1st of March, in each and every year. And it is by this latter act, viz : of 1830, that the fiscal year, commencing on the 1st of March, ending the last of February in each and every year, is established.

Under the several acts passed previous to the year 1833, the difficulties which present themselves in this case could not have arisen, inasmuch as the offices of assessor and collector were united in the same person, they were appointed about the time when their duties were to commence, and they proceeded regularly on through the year. Under the new constitution, these officers are elected once in two years, at the biennial elections holden in November. The fiscal year commences the 1st of March ; and the assessments are made and the assessment rolls are delivered to the collector of taxes during the spring and summer previous to the time of election, every second year. In the intervening year the difficulty does not exist, the collector being in office two years.

In the case before us, the fiscal year, within which the arrearages of taxes sued for, accrued, commenced the 1st of March, 1837,

and ended the last of February, 1838; the assessment was made by the 1st of June, and the assessment lists were to be delivered to the collector by the 1st of July: and it was in proof that the list was delivered to H. Hanchett in August. But Hanchett was not elected till November. Who was the collector in the county of Adams, in July or August 1837, does not appear. If Hiram Hanchett, the bondsman in this case, was then collector, he held the office by some previous appointment. If he was the collector elected at the biennial election of 1835, he was the collector to receive the tax lists in July 1837, as his term of office of two years had not then expired. But the collector's bond given in pursuance of the election of November 1837, is sued on. Is this right? Are the sureties of Hanchett in this case bound for his acts done previous to the time of his election? Surely not.

The act found in Howard & Hut. Digest, p. 108, sec. 20, provides, " that the several assessors and collectors of taxes heretofore appointed, and which may hereafter be appointed, shall be, and they are hereby authorised to finish the collection of all arrearages of taxes which had become due during their continuance in office, notwithstanding the time may have expired for which such assessor and collector was appointed ; or they may, at their discretion, deliver a list of such arrearages to their successors in office, to be by them collected and accounted for to their respective predecessors."

Now, if the tax collector, elected in November, is considered in office, and bound to enter on his duties previous to the first March following, we have the incongruity of two collectors of taxes at the same time every second year—of one collector entering on the duties of his office the first July, the time when he is to receive the assessment-list from the assessor, the collection of which should be completed the first March following; and of another, elected the next succeeding November, or of a man out of office, responsible for the duties thereof, either performing them himself or of employing his successor as his deputy or agent, doing and performing acts which should be done only by a regularly elected and qualified officer of the government.

All the evidence given to support this action was given under the supposition that the collector, elected at *November* election,

1837, is bound for the revenue of the fiscal year which commenced the first of March previous to his election to that office; and when the witness, Staunton, spoke of having delivered the assessment-list of 1837 to the tax collector in *August*, 1837, he must have had allusion to the collector in office *at that time*, and it follows of course that *that* collector and *his* sureties are liable for any default in collecting and accounting for the amount of such assessment, by virtue of the bond given by him on his appointment, which bond is not the bond sued on in this case; and the auditor's certificate has reference to the same officer, and not to the one elected in 1837.

Mr. Hiram Hanchett may have been the collector from '35 to '37, and re-elected in November, 1837; but that would not alter the case. If that were so, the suit should have been on the bond in existence and in force at the time the collector received the assessment-list. If a recovery should be had in the present case, it would be no bar to an action on the bond previously given. But we have no evidence that Hanchett was the collector previous to November, 1837. There seems to be a mystery about this, not easily understood. If the assessor's list was delivered to Hanchett after his election, then he and his sureties are liable, because he was then authorized to collect the taxes; and if not so collecting for his predecessor, he is liable to the state directly; or if he had in his possession, after his election in November, 1837, the assessment-list of that year, and was not accountable to his predecessor in office, the presumption is, that he did collect under it, and he and his sureties will be liable in this action.

There is one other matter worthy of notice, although not necessary to the disposition of the case. It is this: The act of 1822 united the offices of assessor and collector, and directed three lists of the annual assessments to be made—one for the auditor of public accounts, one for the county treasurer, and one to be retained by the assessor, who was also collector; and, since those offices (of assessor and collector) have been separated, as they have been for some of the counties of the state, there is no act which I have found directing the manner of placing the assessment-lists in the collectors' hands. I have no doubt but that the collector, when

Montgomery *et al. v.* The Governor.

he does get the assessment-list in his hands, may collect under it, and be responsible therefor; but what will be sufficient evidence of such delivery is not prescribed, and of course it must be proved, like any other matter *in pais.*

We think the court erred in excluding evidence of the time of Hanchett's death, of the amount of uncollected taxes, and of the kind of money or bank notes received by him as collector, provided it was such money as the law authorized him to receive.

The legislature of our state, as well as the congress of the United States, have deemed it necessary to throw much of the burthen of proof upon defendants, in actions brought against them as defaulting collectors of the revenue. This is owing to the nature of the trust confided to them, and of the official character of every act which creates the liability of those officers; and surely it is not unreasonable to allow a defendant, in such cases, to prove the negative, when charged as a defaulter—such as to show how he performed his duty in his life time, and when he ceased, by the act of God, to be able to perform it.

The judgment must be reversed, and cause remanded for a new trial.